## Blair, Appellant, *v.* Stewart.

*Contract—Agreement—Payment of attorney's fees—Mortgage—"Proceeds" of sale.*

Where a client conveys to his attorney certain real estate on which is a mortgage, and at the same time agrees in writing that the attorney shall sell the land and retain one-fourth of the proceeds for fees earned, and that the balance of the proceeds less taxes and expenses shall be paid to himself, and no allusion is made to the mortgage, and subsequently the land is sold under proceedings on the mortgage, the attorney will be entitled as payment of his fees, to one-fourth of the whole price bid at the sale, and not to the price less the mortgage.

Argued April 30, 1913.  Appeal, No. 168, April T., by Lizzie Bruce, use plaintiff, from judgment of · C. P. Allegheny Co., July T., 1910, on verdict in case of Joseph. Blair, for use of Lizzie Blair, v. M. Wilson Stewart. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Feigned issue on execution.  Before REID, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Lizzie Bruce for $283.42,

272      BLAIR, Appellant, *v.* STEWART.

Statement of Facts—Opinion of the Court.   [55 Pa. Superior Ct.

and for M. Wilson Stewart, for $1,239.44.   Plaintiff appealed.

*Error assigned* was in giving binding instructions for the verdict as rendered.

*H. B. Wassell,* of *Ache and Wassell,* for appellant.

*John W. Thomas,* for appellee.

Opinion by Orlady, J., October 13, 1913:

This is an appeal by the plaintiff from a judgment entered in a feigned issue. A tract of land had been sold at sheriff's sale under a proceeding upon a mortgage, and the sum realized from the sale was more than sufficient to pay the mortgage debt. The surplus was claimed by each of the parties, plaintiff and defendant, and this issue was framed to determine their rights. The trial resulted in a verdict and judgment that the plaintiff was entitled to $283.42, and the defendant to $1,239.44, out of the fund in question. The plaintiff appeals from that judgment.

The defendant had acted as attorney for Blair, in an action of ejectment in which the title to his property was involved. The defendant and Blair had on April 17, 1903, entered into a written agreement reciting that the defendant and A. H. Mercer, Esq. (who subsequently withdrew from the case and is not now concerned), represented Blair in an action of ejectment which had been brought on the preceding day, and contained the following covenant which it is asserted bears upon the rights of the parties to this controversy. "And said Blair agrees to pay said Mercer and Stewart $100 as a retainer and twenty-five per cent of all money recovered or secured and twenty-five per cent of the fair market value of all land recovered whether secured by default, verdict or compromise between the attorneys or between the principals or in any manner what-

ever." That action resulted in a verdict and judgment in favor of Blair for the tract of land in question, "upon condition that plaintiff (Blair) pay $1,500 within thirty days from date. . . . If plaintiff fails to pay within the above period of thirty days, the court to enter judgment for this property for defendants non obstante veredicto." In order to comply with this conditional verdict Blair borrowed $1,500 from a gentleman who had been employed by the defendant (Stewart) as counsel to assist him in the case and gave to that gentleman a mortgage for $1,650; the additional $150 being the counsel fees of that gentleman for services in the case. Blair then paid the $1,500 to the defendants in the action of ejectment and thus secured title to the property. It is conceded that the $150 was properly included in the mortgage and is chargeable against the interest of the defendant in this fund, under the terms of the agreement between the parties. Blair had also paid to the counsel thus associated in the case, at the request of Stewart, $100 in cash, which with the $150 included in the mortgage, is to be charged against the defendant in ascertaining his share of the fund.

The parties did not, after the termination of the action of ejectment, take any steps to liquidate the amount of compensation to which Stewart was entitled, by agreeing upon "the fair market value of all land recovered," twenty-five per cent of which was then due Stewart, under the terms of the agreement, there having been a recovery of land in the action. The learned judge of the court below was of opinion that the rights of the parties were to be determined under this agreement, and that, as the only evidence of the value of the land was the price at which it subsequently sold at sheriff's sale, the sum of $3,500 must be accepted as the fair market value of the land, and that defendant's right to compensation under the agreement was one-fourth of that amount, viz.: $875. The court held that the $250 paid by Blair to counsel who assisted Stewart,

was to be deducted from this sum, leaving $625 as the amount of compensation to which Stewart was entitled, and to this was added the sum of $614.44, made up of taxes and other admittedly proper charges against the property which had been paid by Stewart, thus aggregating the sum of $1,239.44 awarded to Stewart. If the covenants of the agreement above quoted were controlling in this case we incline to the opinion that the contention of the appellants, that the judgment should be reversed, ought to be sustained. The covenants above quoted cannot be construed to mean that Blair should pay to Mr. Stewart twenty-five per cent of the full market value of any land in which Blair should be found to have any interest, however small. If Blair had recovered a verdict and judgment for a one undivided fourth part of the land in controversy, it certainly could not be seriously contended that Mr. Stewart could claim as his compensation the full value of that one-fourth part, or all that he had recovered. That agreement meant that his compensation should be twenty-five per cent of the actual recovery. The recovery was not an absolute one of the entire tract of land; it was of the right to have the land upon payment of $1,500. If the land was worth $3,500 and the recovery in the action gave Blair the right to take it upon payment of $1,500, then the value of the actual recovery in that action was $2,000. We are convinced, however, that the covenants of the agreement above referred to do not control in this case.

When Blair had complied with the condition of the verdict and recovered possession of the land, Stewart was entitled to immediate payment of his compensation. Blair had mortgaged the land for $1,650, as above stated, and was not prepared to pay Stewart. Instead of paying Stewart or attempting to ascertain the amount of compensation to which he was entitled, he entered into a new arrangement with him. Blair, on April 24, 1906, executed a deed conveying the property to Stewart,

and it was this deed which gave Stewart standing to claim the surplus of purchase money arising from the sale of the property by the sheriff. The appellant has not printed this deed, nor does the record indicate that it was offered in evidence. We cannot, therefore, assume that it contained any provision which implied a covenant upon the part of Blair to pay the mortgage of $1,650 which was then a lien upon the property. The burden is upon the appellant, in view of the fact that the title is in Stewart, to show that, as against Stewart, she is entitled to any part of the surplus or purchase money. She relies, in order to meet this burden, upon the covenants of a written agreement between Blair and Stewart bearing date the same day, April 24, 1906, upon which the deed was executed. This agreement, after reciting that Blair had by deed of even date therewith, "for the nominal consideration of $1,000," conveyed the land to Stewart, contains the following covenants material to the determination of the question here presented: "That said Stewart shall sell said land in whole or by sub-divisions, as he may deem best, for a total price of not less than $4,000. Out of the proceeds of said sale he shall retain one-fourth thereof for fees earned in the successful prosecution of the ejectment suit for said land . . . . , paying or allowing Blair credit for $250 paid by him to W. B. Rodgers in said case, that balance of the proceeds, less taxes, expenses, and commission shall be paid to said Blair." This agreement and the deed of even date therewith superseded the agreement of April 17, 1903, and entirely changed the relation of the parties toward the property and each other. The title to the property became vested in Stewart, he surrendered the right which he had previously possessed to hold Blair personally liable for his compensation under the earlier agreement, and his right to such compensation became limited to that particular property. The rights of the parties are to be determined under the express covenants of their written

agreement, of April 24, 1906, and the deed which it accompanied, in neither of which, so far as disclosed by the record, is there any reference to the $1,650 mortgage. The covenant of Stewart was to sell the land, in whole or by subdivisions, for a total price of not less than $4,000. "Out of the proceeds of said sale," that is, the price at which he sold it, "he shall retain one-fourth thereof for fees earned in the successful prosecution of the ejectment suit for said land." There could be here no question as to the amount which he was entitled to take; he could not assert the right to have interest on the money, as he could have done under the prior agreement. The only amount which the agreement provides shall be deducted from his one-fourth is the $250 which had been paid to Mr. Rodgers. The contract expressly provides that all taxes, expenses, and commission shall be taken out of Blair's share of the purchase price. Stewart took the chances of getting his compensation out of the property when it was sold, but the agreement clearly indicates that it was not the intention of the parties that he should assume any liability for the expenses of carrying the land. The parties by their written agreement made the price at which the land was sold the basis for the distribution of the purchase money, they covenanted that Stewart should have one-fourth of that amount, subject to one specific deduction, clearly expressed; and the agreement contains no suggestion that the mortgage which Blair had created should be deducted before ascertaining the amount which Stewart was to receive. Blair still had an equitable interest in this property and if judgments had been entered against him they might have been a lien upon that interest, but they could have had no effect upon the amount which Stewart was entitled to retain out of the purchase money when a sale was made. The parties having made their own written agreement, and there being no evidence that there was fraud, accident or mistake in the execution thereof, it must be enforced ac-

cording to its terms, and the property having been sold on a mortgage executed by Blair for the price of $3,500, Stewart is entitled to receive out of the surplus, under the express terms of the final agreement, the sum of $614.44, the amount of the taxes and expenses which he had paid and one-fourth of the price for which the property was sold, or $875, less $250, as specified by the covenant of the contract, and this was the result reached in the court below.

The judgment is affirmed.